IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANDREW MYERS, #S05918** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )   CIVIL NO.  12-cv-318-JPG |
| | ) |
| **TERRI ANDERSON, S.A. GODINEZ,** | ) |
| **CORRECTIONAL OFFICER MAUE,** | ) |
| **JANE DOE 1, JANE DOE 2,** | ) |
| **JOHN DOE,** | ) |
| **WARDEN OF MENARD** | ) |
| **CORRECTIONAL CENTER,** | ) |
| **MAJOR LYARLA,** | ) |
| | ) |
|       **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

    Plaintiff Andrew Myers, an inmate in Pontiac Correctional Center ("Pontiac"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 based on incidents that occurred while he was housed at Menard Correctional Center ("Menard").[1] Plaintiff is serving two consecutive twenty year sentences for two counts of predatory criminal sexual assault.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.- The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

---

[1] Plaintiff was transferred from Menard to Pontiac on May 2, 2012.

>    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, see Smith v. Peters, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." Id. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. See Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

The following is an overview of the allegations in Plaintiff's complaint. At the time of the incidents within his complaint, Plaintiff was incarcerated at Menard. Plaintiff began receiving threats from another inmate (a member of the Latin Kings) in the East Cell House ("ECH") of

Menard on November 29, 2011, after that inmate found out that Plaintiff was incarcerated for predatory criminal sexual assault. This inmate and other ECH inmates told him they would kill him if he did not immediately sign into protective custody ("PC"). Plaintiff signed into PC on November 30, 2011. On that same day, Plaintiff was placed on kickout status by Defendants Jane Doe 1 and 2 (Counselors on Protective Custody Committee) and Defendant Warden. While Plaintiff was in PC, inmates threw rotten milk into the PC area several times; Plaintiff was struck twice during these incidents. The Administrative Review Board interviewed Plaintiff on February 8, 2012. Despite Plaintiff's claim that he was told "to get out of [his] cell or [he] would be killed because of [his] crime," the Board found that Plaintiff had only received hearsay threats, and recommended his removal from PC. Defendants Anderson and Godinez signed this recommendation. Plaintiff was removed from PC and placed in Menard's West Cell House ("WCH") on February 24, 2012.

Once in WCH, Plaintiff told Defendant Maue (Correctional Officer) that he was incarcerated for predatory criminal sexual assault after Defendant Maue asked why he was in prison. Defendant Maue then told Plaintiff that "he would force [him] to go to chow so that he could point [him] out to the other inmates." Defendant Maue forced Plaintiff to get on his knees and put his head against the wall for several minutes, claiming it was for "reckless eyeballing," though Plaintiff was not looking anywhere near Defendant Maue's direction. Plaintiff requested grievance forms and PC following this incident, but was denied them.

On February 25, 2012, Defendant Maue told the inmates in the cells on either side of Plaintiff's cell that Plaintiff was a child molester. Those inmates spread the word about Plaintiff's conviction, and ultimately a Latin King sent a kite to Plaintiff's cellmate, Danny Keuhner (who

had previously snitched on other Latin Kings), telling Keuhner that unless he beat his cellmate (Plaintiff) or went to PC and took his cellmate with him, he would get beaten by the Latin Kings. Plaintiff was denied grievance forms following this incident, and his letters to Defendant Warden and Clinical Services went unanswered.

On February 26, 2012, inmates spit on Plaintiff's face and body while they were in the shower, telling him it was "just a warning," and that if they had not been in handcuffs, it would have been worse.  The Latin Kings continued to make threats against Plaintiff and his cellmate, telling Keuhner again to "beat that child molester…or go to PC," and that if Plaintiff and Keuhner were not gone by the end of the lockdown, "the Latin Kings were going to get Mr. Keuhner and the child [molester]..."

On February 27, 2012, a lieutenant told Plaintiff that he would put him in PC after the lockdown.  However, on February 29, 2012, Plaintiff's cellmate was taken to PC, but Plaintiff remained in the general population because, according to Defendant Lyarla, there was no bed space in PC.  Plaintiff received another threat in the form of an anonymous kite on March 1, 2012, which promised that Plaintiff would be sexually assaulted in the shower because of the nature of his conviction.  Plaintiff told his mother about the threats during a visit on March 2, 2012, and they spoke to a sergeant on that same day.  Upon Plaintiff's return to WCH, he was told to pack for PC.  However, Plaintiff was again told that there was no room in PC.

Plaintiff was once more told to pack for PC on March 5, 2012, but while waiting in the West House bullpen, Defendant John Doe (Correctional Officer), who had his name tag covered, told Plaintiff that "[he] deserve[d] to die," and "need[ed] to stay in population and accept the…beating [he] deserve[d]."  Defendant John Doe then showed Rafael Guerrero, one of the

4

Latin Kings who had made threats against Plaintiff and his cellmate, Plaintiff's PC request form, telling Guerrero that Plaintiff had listed him and the Latin Kings as enemies and his reason for requesting PC.

Plaintiff requests injunctive relief. He does not request money damages.

**Discussion**

Plaintiff requests a preliminary injunction preventing anyone in the Illinois Department of Corrections from placing him in general population and preventing retaliation from any Defendants. He also requests a permanent injunction preventing Defendants from removing him from PC. Finally, Plaintiff requests to be transferred out of Menard for his protection from the inmates and correctional officers at that prison. Plaintiff was transferred out of Menard on May 2, 2012. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). See also *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). As Plaintiff has been transferred from Menard, he no longer has a need for relief and his requests for permanent injunctive relief are moot. Additionally, Plaintiff's requests for preliminary injunctions lack specificity and are therefore denied. Accordingly, Plaintiff's claim is dismissed as moot.

**<u>Disposition</u>**

**IT IS HEREBY ORDERED** that Plaintiff's claim is **DISMISSED** as moot.

**IT IS SO ORDERED.**

**DATED:   July 26, 2012**

                                              *s/J. Phil Gilbert*
                                              **United States District Judge**